IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES STEEL CORPORATION; NIPPON STEEL NORTH
AMERICA, INC.; and NIPPON STEEL CORPORATION,

*Petitioners,*

v.

THE COMMITTEE ON FOREIGN INVESTMENT IN THE UNITED
STATES, ET AL.,

*Respondents.*

On Petition for Review of Actions of President Biden and of the
Committee on Foreign Investment in the United States

## PETITIONERS' OPPOSITION TO
## UNITED STEELWORKERS' MOTION TO INTERVENE

Douglas H. Hallward-Driemeier
ROPES & GRAY LLP
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 508-4600
Douglas.Hallward-
Driemeier@ropesgray.com

*Counsel for Petitioners Nippon
Steel North America, Inc. and
Nippon Steel Corporation*

Andrew J. Pincus
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3000
APincus@mayerbrown.com

*Counsel for Petitioner United
States Steel Corporation*

*(Additional counsel listed on signature page)*

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................ 1

BACKGROUND ........................................................................ 5

ARGUMENT ............................................................................. 8

   I.     UNITED STEELWORKERS MAY NOT INTERVENE
         BECAUSE IT LACKS ARTICLE III STANDING ................ 8

       A.     United Steelworkers' Claimed "Injuries" Do Not
           Satisfy Article III. ....................................................... 8

       B.     The Decisions Cited By United Steelworkers Are
           Inapposite. ................................................................. 15

  II.    EVEN IF IT COULD ESTABLISH STANDING,
         UNITED STEELWORKERS FAILS TO SATISFY THE
         OTHER REQUIREMENTS FOR INTERVENING AS
         OF RIGHT. ..................................................................... 19

       A.     The Union Lacks A Sufficient Interest Relating
           To The Transaction. ................................................... 20

       B.     Disposition Of The Action Will Not Impair Or
           Impede United Steelworkers' Ability To Protect
           Any Interest. .............................................................. 22

       C.     United Steelworkers' Interests Are Adequately
           Represented by Respondents. ..................................... 23

       D.     Permitting Intervention Here Would Open The
           Door Wide To Intervention By Numerous Parties. ..... 24

 III.   THE COURT SHOULD DENY UNITED
         STEELWORKERS' REQUEST FOR PERMISSIVE
         INTERVENTION. ............................................................ 26

CONCLUSION ........................................................................ 28

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Arpaio v. Obama,*
  797 F.3d 11 (D.C. Cir. 2015) ............................................................. 4

*Bako Pathology LP v. Bakotic,*
  288 A.3d 252 (Del. 2022) ................................................................. 22

*Bldg. & Constr. Trades Dep't v. Reich,*
  40 F.3d 1275 (D.C. Cir. 1994) ......................................................... 23

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ............................................................................ 9

*Crossroads Grassroots Policy Strategies v. FEC,*
  788 F.3d 312 (D.C. Cir. 2015) ......................................................... 16

*Deutsche Bank Nat'l Tr. Co. v. FDIC,*
  717 F.3d 189 (D.C. Cir. 2013) .................................. 8, 11, 18, 19, 20, 24

*Diamond v. Charles,*
  476 U.S. 54 (1986) ............................................................................ 27

*FDA v. Alliance for Hippocratic Medicine,*
  602 U.S. 367 (2024) .................................................................... 10, 25

*Fund for Animals, Inc. v. Norton,*
  322 F.3d 728 (D.C. Cir. 2003) .................................................... 15, 16

*Georgia v. U.S. Army Corps of Eng'rs,*
  302 F.3d 1242 (11th Cir. 2002) ....................................................... 27

*Havens Realty Corp. v. Coleman,*
  455 U.S. 363 (1982) .......................................................................... 10

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ............................................................................ 9

*Mass. Sch. of Law at Andover, Inc. v. United States,*
   118 F.3d 776 (D.C. Cir. 1997) ............................... 8

*Mendoza v. Perez,*
   754 F.3d 1002 (D.C. Cir. 2014) ......................... 17

*Murthy v. Missouri,*
   603 U.S. 43 (2024) ............................................. 11

*NLRB v. Ins. Agents' Int'l Union,*
   361 U.S. 477 (1960) ........................................... 14

*Norfolk S. Ry. v. Solis,*
   915 F. Supp. 2d 32 (D.D.C. 2013) ..................... 14

*Save Jobs USA v. Dep't of Homeland Sec.,*
   942 F.3d 504 (D.C. Cir. 2019) ........................... 17

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016) ............................................. 9

*TransUnion LLC v. Ramirez,*
   594 U.S. 413 (2021) ............................................. 8

*Water Transp. Ass'n v. ICC,*
   819 F.2d 1189 (D.C. Cir. 1987) ......................... 17

*Yocha Dehe v. U.S. Dep't of the Interior,*
   3 F.4th 427 (D.C. Cir. 2021) ............................. 16

**Statutes**

50 U.S.C.
   § 4565 ................................................................... 5
   § 4565(b)(1)(A) ................................................... 5
   § 4565(b)(1)(B) ................................................... 5
   § 4565(d)(1) ........................................................ 6
   § 4565(d)(4) ........................................................ 6
   § 4565(*l*)(2) ........................................................ 6
   § 4565(*l*)(3)(A)(i) ........................................... 5, 6

**Other Authorities**

Fed. R. Civ. P. 24 ...............................................................20, 22

Fed. R. Civ. P. 24(a) .........................................................19, 20

Fed. R. Civ. P. 24(a)(2) ................................................20, 22, 23

Fed. R. Civ. P. 24(b) ........................................................26, 27

Fed. R. Civ. P. 24(b)(1)(B) ...................................................26

Fed. R. Civ. P. 24(b)(3) ........................................................26

Maya Wilkins, *USW President McCall Releases Statement
    After U.S. Steel Lawsuit*, Chi. Trib. (Jan. 12, 2025) ..........................28

## INTRODUCTION

This proceeding relates to the proposed merger between United States Steel Corporation (U. S. Steel) and Nippon Steel North America, Inc. (with Nippon Steel Corporation, Nippon Steel). Petitioners challenge the actions blocking that merger by then-President Biden and the Committee on Foreign Investment in the United States (CFIUS).

The public record makes clear that President Biden's action had nothing to do with national security—the only permissible ground for rejecting the merger under the governing statute—and rested instead on illegitimate political considerations: his desire to be endorsed for re-election by the United Steel, Paper and Forestry, Rubber, Manufacturing, Allied Industrial and Service Workers International Union (United Steelworkers or union).

David McCall, the union president, made clear that blocking the merger was critical to the United Steelworkers leadership. And endorsement by the United Steelworkers' leadership was critical to President Biden's reelection campaign in the swing state of Pennsylvania.

On February 2, 2024, McCall issued a statement saying that he had received "personal assurances" that President Biden had the union's "back[]." App.593. President Biden formally announced his decision to block the transaction in March 2024, before the CFIUS national security review process had even begun. United Steelworkers endorsed his re-election less than a week later. CFIUS, which was composed of President Biden's political appointees, then engineered a sham review that enabled President Biden to implement his announced decision to block the merger.

President Biden's and CFIUS's actions violated Petitioners' constitutional and statutory rights. Petitioners seek invalidation of those actions and a remand to CFIUS with instructions to engage in a new review of the transaction, consistent with the Constitution and governing statute.

Now, remarkably, the union has moved to intervene as a respondent, both as of right and on a permissive basis.

But there is no factual or legal basis for intervention, and the motion should be denied. Indeed, the motion is simply another effort by David McCall to try to improperly obstruct the merger—for reasons

unrelated to national security—and thus reinforces the merits of Petitioners' substantive challenge.

Granting intervention would violate this Court's settled precedent, and open the door to intervention by a wide variety of third parties seeking to challenge, or defend, actions by CFIUS and the President— even though they are not parties to the transaction under review. Suppliers, customers, individual employees, competitors, and other parties invoking speculative downstream effects from permitting or blocking a transaction all would be able to institute actions in this Court or participate as parties in actions initiated by others.

United Steelworkers asserts three interests in support of the motion to intervene as of right, but none comes close to satisfying the essential prerequisite for intervention: demonstrating Article III standing. First, the union contends that if Petitioners prevail and the transaction ultimately is consummated, the union may have to expend additional resources in trade-remedy proceedings. Second, it contends that consummation of the transaction may lead to increased job insecurity for its members. Third, it maintains that the transaction

would harm the United Steelworkers' bargaining position vis-à-vis a post-merger U. S. Steel.

Each asserted harm is speculative and entirely dependent on "predictions of future events (especially future actions to be taken by third parties)," *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015)—the very sort of claim that this Court has consistently found insufficient to establish standing. (Also, none of the union's purported harms has anything to do with national security.) The union's lack of standing to intervene in support of the governmental actions is further confirmed by the indisputable reality that neither United Steelworkers nor its property was the object of the at-issue government actions. And the union does not even attempt to argue that the government is incapable of advancing a full defense of the actions at issue here, a separate basis for rejecting intervention. For similar reasons, the Court should not allow United Steelworkers to intervene permissively.

The union may put all of its arguments before the Court by seeking permission to file an *amicus curiae* brief—just like the local government representatives, trade associations, local union representatives, and

other parties that filed *amicus* briefs in support of Petitioners. It may not participate as a party.

## BACKGROUND

For purposes of this opposition, Petitioners recite only the relevant factual and procedural background; a more complete description appears in Petitioners' opening brief. *See* Opening Br. 10-30.

In December 2023, U. S. Steel ended a monthslong bidding and negotiation process by announcing that Nippon Steel would acquire U. S. Steel for a total enterprise value of $14.9 billion. The merger was contingent on the parties' ability to obtain regulatory approvals, which included completing the CFIUS national security review process, set forth in Section 721 of the Defense Production Act, 50 U.S.C. § 4565. Opening Br. 14-15.

Under that process, CFIUS must "review" and "investigat[e]" a "covered transaction" to "determine the effects of the transaction on the national security." 50 U.S.C. § 4565(b)(1)(A)-(B). After completing its review, CFIUS may allow the transaction to proceed. But if it identifies a national security concern, CFIUS may enter into an agreement with the parties to the transaction that mitigates any risk to national security, *id.*

§ 4565(*l*)(3)(A)(i), or it may "refer the transaction to the President," *id.* § 4565(*l*)(2). In turn, the President—only if CFIUS refers the transaction to him—may prohibit the transaction *only* by finding both that (a) "there is credible evidence" that the transaction threatens to impair national security and the potential threats to national security cannot be mitigated by a national security agreement; and (b) no other "provisions of law . . . provide adequate and appropriate authority" to protect national security. *Id.* § 4565(d)(1), (4). Thus, national security concerns are the only permissible basis for action by both CFIUS and the President.

The record makes clear that President Biden's decision here was not at all based on national security concerns, but rather on election-year politics—in particular, his effort to gain United Steelworkers' support for his reelection campaign in the battleground state of Pennsylvania. Opening Br. 15-18.

President Biden made and announced his decision to block the transaction before the CFIUS process even began. CFIUS—composed of President Biden's political appointees—then reverse-engineered its process to result in a referral of the transaction to President Biden,

flouting its procedural obligations; disclosing confidential information to McCall and others, in violation of CFIUS's own regulations; and declining to engage at all on Petitioners' multiple mitigation proposals. Opening Br. 19-29.[1] That referral made it possible for President Biden to block the merger.

President Biden's and CFIUS's actions violated Petitioners' due process rights; CFIUS's referral of the transaction pursuant to Section 721 of the Defense Production Act violated both that Act and the Administrative Procedure Act; and President Biden's decision to block the transaction was *ultra vires*. Opening Br. 33-69.

On February 5, 2025, United Steelworkers moved to intervene in this case.

---

[1] Those proposals included binding commitments to ensure that U. S. Steel and its management continue to pursue trade measures under U.S. law free from interference by Nippon Steel; maintain and enhance U. S. Steel's production capacity in the United States, including commitments by Nippon Steel for investments across U. S. Steel's union-represented facilities; and assure the continued ownership of U. S. Steel in the United States. Opening Br. 7-8, 21-24 & 63-67.

**ARGUMENT**

## I. UNITED STEELWORKERS MAY NOT INTERVENE BECAUSE IT LACKS ARTICLE III STANDING.

"[I]ntervention in the court of appeals is governed by the same standards as in the district court." *Mass. Sch. of Law at Andover, Inc. v. United States*, 118 F.3d 776, 779 (D.C. Cir. 1997). For both intervention as of right and permissive intervention, "it is . . . circuit law that intervenors must demonstrate Article III standing." *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013); *see also id.* at 195-96 (Silberman, J., concurring) ("[o]ur rule requiring all intervenors to demonstrate Article III standing" applies to permissive intervention). The union cannot come close to satisfying these requirements.

### A. United Steelworkers' Claimed "Injuries" Do Not Satisfy Article III.

To satisfy Article III's standing requirement, a would-be intervenor "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

"For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quotation marks omitted). And to be concrete, it "must be *de facto*; that is, it must actually exist." *Id.* at 340 (quotation marks omitted).

In addition, the Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact and that allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up).

Because United Steelworkers does not allege injuries based on government regulation of the union itself, but rather on "regulation . . . of *someone else*" (*i.e.*, Petitioners), the union's standing is "'substantially more difficult' to establish." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (citation omitted). That is because in such circumstances, standing depends on the response of the third party being regulated by the government, not an injury flowing directly from the governmental action itself. *Id.*

The union does not try to explain why it has standing even though it bears that burden. It identifies no concrete injury in fact that is actual

or imminent. The three speculative interests it asserts in support of intervention are not anywhere close to sufficient to establish standing.

*First*, United Steelworkers argues (Mot. 12-15) that consummation of the merger will force it to use resources for participation in trade-remedy proceedings, on the theory that a post-merger U. S. Steel will stop participating in such actions.

The Supreme Court rejected this very responsive-expenditure theory of standing just last year in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), a case the union fails to cite. There, as here (Mot. 15), a party argued that, "under *Havens Realty Corp. v. Coleman*, [455 U.S. 363 (1982),] standing exists when an organization diverts its resources in response to a defendant's actions," 602 U.S. at 395. But *Alliance for Hippocratic Medicine* expressly *disavowed* this interpretation of *Havens*, rejecting the argument that "standing exists when an organization diverts its resources in response to a defendant's actions," and explaining that an organization cannot "spend its way into standing." *Id*. at 394-96.

This asserted injury fails for the additional reason that it is not certainly impending. For United Steelworkers' hypothetical trade-

remedy-expenditure injury to occur, Petitioners would have to prevail on their merits claims of insufficient process, then obtain a favorable determination approving the merger on remand to CFIUS, then consummate the transaction, and then decline to participate in as-yet-to-be-filed trade-remedy proceedings. Put simply, "at least [four] major contingencies must occur before [Petitioners'] suit could result in [this] economic harm to" United Steelworkers. *Deutsche Bank*, 717 F.3d at 193.

The claimed injury—the potential reallocation of resources to address trade-remedy proceedings—likewise is not traceable to the challenged government actions, but instead to independent actions of parties other than the government. And the Supreme Court consistently rejects standing based on "one-step-removed, anticipatory" claims of injury that rest on predictions of future actions by parties other than the defendant. *Murthy v. Missouri*, 603 U.S. 43, 56 (2024); *see also* App.212 ¶7, App.223-26 ¶¶28-30 (Padilla Decl.) (explaining that any concern regarding trade-remedy proceedings "is entirely speculative and relies upon multiple, interdependent, and erroneous assumptions about private parties' economic incentives and actions").

Indeed, Petitioners' proposed national security agreement contained a binding commitment by Nippon Steel to refrain from interfering with U. S. Steel's decisions to pursue trade cases—and to leave those decisions to U. S. Steel's board, which would be composed of a majority of U.S. citizen board members. Opening Br. 65-66. United Steelworkers' theory of standing speculates that Nippon Steel could and would disregard this commitment, and for this additional reason is fatally speculative and improperly relies on the assumption of future action by parties other than the government.

*Second*, United Steelworkers asserts (Mot. 15-20) that its members may suffer increased job insecurity if the merger is consummated. But again, its asserted injury is entirely speculative, not imminent, and depends on the actions of third parties.

To begin with, multiple members and local leaders of the United Steelworkers filed an *amicus* brief supporting **Petitioners**. Thus, the union leadership's argument is directly contrary to the position of the local steelworkers themselves, who strongly favor the merger because it will **secure** their jobs. *See* Brief for Local Governmental Officials and

12

Local Union Officials of Monongahela Valley and Gary, Indiana as *Amici Curiae*, at 16-19 (Local Government and Union Officials Br.).

Those views are supported by the decision of a labor arbitration panel convened at the union's request, which determined that "[t]here will be no layoffs, plants idled or permanently closed following completion of, or as a result of, [the merger]" through the end of the union's current labor agreement in late 2026. AR_010498-99.

This claim of injury also fails because it rests entirely on the actions of parties not before the Court, and for that additional reason is insufficient to establish standing. The union speculates (Mot. 16) that consumer demand for cheaper foreign steel may mean that Nippon Steel's mills in other countries are more profitable than those in the United States, leading to closure of U.S. facilities. But that speculation assumes particular actions by third-party actors across the globe, including steel producers and customers. That cannot suffice to establish standing.

Finally, Petitioners' proposed national security agreement included binding, enforceable provisions requiring investments to maintain and enhance production at U. S. Steel facilities post-merger. Opening Br. 66-

67. Again, United Steelworkers' theory of standing speculates that Nippon Steel could and would disregard this commitment.

*Third*, United Steelworkers argues (Mot. 20-22) that it has a legally cognizable interest because consummation of the merger would result in a larger company that would weaken the union's bargaining position.

Accepting this injury as sufficient to establish standing would mean that a union, or even an individual employee, could intervene to challenge *any* government approval of a merger that would increase the size of an employer. Every merger or acquisition inevitably changes "the degree of economic power" held by a company. *NLRB v. Ins. Agents' Int'l Union*, 361 U.S. 477, 489 (1960). But, under United Steelworkers' theory, whenever a company expands its size (and therefore its bargaining power), a union suffers a legally cognizable injury and may sue to enjoin that expansion. That would broaden Article III standing well beyond the breaking point. *Cf. Norfolk S. Ry. v. Solis*, 915 F. Supp. 2d 32, 41 (D.D.C. 2013) (denying intervention because unions could not show that "interest as a collective bargaining overseer is sufficiently related to defending the [agency's] interpretation of [the statute] to merit intervention.").

**B. The Decisions Cited By United Steelworkers Are Inapposite.**

United Steelworkers cites in passing a few decisions from this Court. None supports the union's position.

For example, United Steelworkers invokes *Fund for Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003), which involved a challenge to a rule declining to classify certain Mongolian sheep as an endangered species. The Mongolian government moved to intervene, and the Court held that it had standing. As the Court explained, "while [the Mongolian government] is not itself the object of the challenged agency action, sheep that Mongolia regards as its national property and natural resource plainly are its subject." *Id.* at 734. That was enough to confer standing because there was "no meaningful distinction between a regulation that directly regulates a party and one that directly regulates the disposition of a party's property." *Id.*

Here, by contrast, nothing in the challenged government action "directly regulates" any of United Steelworkers' property, interests, or rights. This case concerns a merger to which neither the union nor its members are a party, pursuant to a national security statute that does not regulate the conduct of the union or its members. At most, United

Steelworkers speculates that the government's blocking of the transaction, if lifted, *might* result in a merger that *might* possibly lead to speculative downstream effects on United Steelworkers' interests. That is very far from the direct, concrete effect on property owned by the putative intervenor in *Fund for Animals*. *See also Yocha Dehe v. U.S. Dep't of the Interior*, 3 F.4th 427, 431 (D.C. Cir. 2021) (no standing when "neither [the would-be intervenor] nor its property is the direct subject of the" government's action and the action "is too many steps removed from [the] claimed threat of future harm . . . for that harm to be imminent").

United Steelworkers also cites *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312 (D.C. Cir. 2015). But the agency decision challenged there, so long as it remained in place, meant that the intervenor "face[d] no further exposure to enforcement proceedings before the FEC related to the complaint, nor [wa]s it exposed to civil liability via private lawsuit." *Id.* at 318. Thus, the intervenor had standing because "invalidating the . . . order would extinguish the current barrier to enforcement and would limit the [government agency's] discretion in the future." *Id.* at 319. There is no remotely similar interest in this case, where setting aside President Biden's and CFIUS's actions

would not affect United Steelworkers' legal rights or potential liabilities in any respect.

United Steelworkers gets no support from two decisions it cites (Mot. 19) for the proposition that the hypothesized prospective economic disadvantage its members may face from the merger supports intervention.

Both cases involved rulemaking proceedings that led to "an actual or imminent increase in competition" that could harm the intervening party. *Save Jobs USA v. Dep't of Homeland Sec.*, 942 F.3d 504, 509 (D.C. Cir. 2019) (quotation marks omitted); *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014). This action, by contrast, seeks review of a party-specific determination akin to an adjudication, not a rule setting legal standards governing the would-be intervenor and its operations. *See* Opening Br. 40-41. United Steelworkers had no right under the Defense Production Act to participate in the CFIUS proceeding (as it improperly attempted to do)—or, given CFIUS's strict confidentiality requirements, even to receive information about the proceeding. It therefore has no right to participate before this Court. *Cf. Water Transp. Ass'n v. ICC*, 819 F.2d 1189, 1192 (D.C. Cir. 1987) ("Only those who have participated in

the proceeding before the Commission have standing to petition for review of its action.").

This case instead resembles *Deutsche Bank National Trust Co.*, *supra*. There, holders of notes issued by a failed bank sought to intervene as defendants in a lawsuit filed by Deutsche Bank against the FDIC, which was serving as the failed bank's receiver. One threshold question was whether the FDIC had transferred the liabilities and obligations to a third-party bank. The would-be intervenors "point[ed] to their economic interest in the receivership funds," but this Court held they nonetheless lacked standing because they did not "show[] that their economic interest faces an imminent, threatened invasion—*i.e.*, one that is not conjectural or speculative." 717 F.3d at 193.

As this Court explained, the movants' claimed injury did not satisfy Article III for two reasons. First, "at least two major contingencies must occur before [the] suit could result in economic harm": the court had to conclude the FDIC had transferred the liabilities, and Deutsche Bank had to prevail on the merits. 717 F.3d at 193. Because two contingencies had to occur to affect the movants' interests, "it seems unlikely that the prospect of harm is actual or imminent." *Id.* Second, "the real alleged

threat to appellants' legally protected interest" was "the prospect that the FDIC would enter into what appellants regard as an unfavorable settlement." *Id.* This concern, however, was "hopelessly conjectural." *Id.*

The attempt to intervene here suffers from the same flaws. As explained above, a series of contingencies must occur before any of United Steelworkers' asserted interests could be affected. And like the movants in *Deutsche Bank*, all of United Steelworkers' asserted injuries are "hopelessly conjectural"—they depend on actions yet to be taken by Petitioners, Respondents, and a host of third-party actors. That dooms United Steelworkers' attempt to establish Article III standing.

## II. EVEN IF IT COULD ESTABLISH STANDING, UNITED STEELWORKERS FAILS TO SATISFY THE OTHER REQUIREMENTS FOR INTERVENING AS OF RIGHT.

Even if the union could establish Article III standing (and it cannot), the union fails to satisfy the other prerequisites for intervention as of right. Thus, Rule 24(a) permits intervention only if the putative intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect

its interest, unless existing parties adequately represent that interest."

Fed. R. Civ. P. 24(a)(2).

## A. The Union Lacks A Sufficient Interest Relating To The Transaction.

The union plainly does not have the type of interest that Rule 24(a) requires.

Again, *Deutsche Bank* is instructive. There, the Court concluded that "[e]ven if appellants enjoyed Article III standing . . . they would still run afoul of *prudential* standing requirements." 717 F.3d at 194. As the Court explained, prudential standing "could be thought similar to the concept embodied in Rule 24 that a proposed intervenor must have an interest 'relating to' the property or transaction at issue in litigation." *Id.* And there, the would-be intervenors "lack[ed] prudential standing . . . because they were neither the parties nor intended third-party beneficiaries" of the transaction. *Id.*

The same conclusion applies here. As explained, United Steelworkers is not a party to, and has no rights in, the CFIUS process. Nor is the union's interest even relevant to the determination made under the Defense Production Act by the President or CFIUS, which is limited to consideration of national security, not a union's concern with

its finances or negotiating strength. United Steelworkers therefore has no interest relating to the governmental decisions at issue here.

The same is true when looking at the case from the perspective of the private transaction before CFIUS and President Biden. United Steelworkers is not a party to the proposed merger. That merger is a transaction between U. S. Steel and Nippon Steel. United Steelworkers may be self-interested in whether the merger goes forward, but it plainly is not a party to the agreement.

Nor is the union an intended third-party beneficiary of the agreement. *See* Merger Agreement § 9.9 ("[T]his Agreement is for the sole benefit of the Parties and their permitted assigns and nothing in this Agreement is intended to and shall not confer upon any Person other than the Parties any rights or remedies hereunder."). Under Delaware law, which governs the merger agreement, "(i) the contracting parties must have intended that the third party beneficiary benefit from the contract, (ii) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (iii) the intent to benefit the third party must be a material part of the parties' purpose

in entering into the contract." *Bako Pathology LP v. Bakotic*, 288 A.3d 252, 271 (Del. 2022) (quotation marks omitted).

The union does not, and could not, claim that to be true here. Accordingly, United Steelworkers lacks prudential standing to intervene—and thus lacks a sufficient interest in the transaction to warrant intervention under Rule 24.

## B. Disposition Of The Action Will Not Impair Or Impede United Steelworkers' Ability To Protect Any Interest.

United Steelworkers also fails to show that it is "so situated that disposing of the action may as a practical matter impair or impede its ability to protect [its] interest." Fed. R. Civ. P. 24(a)(2).

United Steelworkers devotes only one sentence of its motion to this factor. It asserts that, if Petitioners prevail on the merits, "it would be difficult" to "reestablish the status quo, which is a state of affairs where the proposed merger cannot proceed." Mot. 22 (cleaned up). But the union has no protected interest in the status quo—as explained above, the union has no statutory right to participate in the CFIUS review, no contractual rights arising under the Merger Agreement, and no right to interfere under its labor agreement as the arbitration panel confirmed. Indeed, it would be particularly ironic if the union were permitted to

intervene given its improper interference in the statutory national security review, which is described in Petitioners' opening brief (at 15-18, 24-26, 60-61).

## C. United Steelworkers' Interests Are Adequately Represented by Respondents.

United Steelworkers also is incorrect that its interests are not adequately represented by Respondents. Fed. R. Civ. P. 24(a)(2); *Bldg. & Constr. Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994) ("[T]he party's interest must not be adequately represented by existing parties to the action.").

The union seeks the same outcome here as the government: rejection of Petitioners' constitutional and statutory claims. It presents no reason why the government will fail to adequately defend the challenged actions.

This case therefore resembles *Building & Construction Trades Department, supra*. There, this Court rejected the would-be intervenor union's argument that its interests were not adequately represented by the Department of Labor because the union there "offered no argument not also pressed by" the government. 40 F.3d at 1282. That is just as true here: United Steelworkers has not identified any argument it would

advance that it does not expect Respondents also to present. Accordingly, Respondents adequately represent any interest the union might have (although, as explained, the union has no interest here).

### D. Permitting Intervention Here Would Open The Door Wide To Intervention By Numerous Parties.

Allowing intervention here would have far-reaching adverse consequences, both for the CFIUS review process specifically and for intervention and standing doctrines generally.

United Steelworkers offers no limiting principle to its boundless theory of intervention. This Court was faced with and rejected a similarly limitless theory of standing in *Deutsche Bank*. As the Court explained, if would-be intervenors with a speculative and remote interest in the case were "entitled to intervene, there is no apparent reason why any" competitor or employee, "no matter how small, could be denied a similar opportunity." 717 F.3d at 192.

That is equally true here—and for a broader set of potential intervenors. Certainly if the union were permitted to intervene, then the union members who filed an *amicus* brief in support of Petitioners would be entitled to intervene in support of the transaction, given the harm that

they will suffer if the government actions are permitted to stand. Local Government and Union Officials Br. 19-23.

And it would not end there. Under the union's view, any competitor of a company subject to CFIUS review could challenge CFIUS's approval of a transaction because the transaction could affect the competitor's economic interests. Likewise, suppliers and customers could argue—as United Steelworkers does here—that their relative bargaining power with any company that seeks to expand would be weakened by any such expansion. And, of course, these effects would not be limited to proceedings involving CFIUS: a competitor, customer, or employee who is aggrieved by virtually *any* transaction that involves government approval or disapproval would be entitled to intervene.

Nor would United Steelworkers' position be limited to intervention to defend or challenge a government decision. All of those parties would have standing to *institute* an action challenging *any* Presidential and/or CFIUS action—whether disapproving or approving a transaction under Section 721. *Cf. All. for Hippocratic Med.*, 602 U.S. at 395. It would be open season for any person with a tangential interest in a transaction to invade what is supposed to be a confidential review process focused solely

on national security concerns. The Court should reject this theory of unlimited standing and deny United Steelworkers' motion.

## III. THE COURT SHOULD DENY UNITED STEELWORKERS' REQUEST FOR PERMISSIVE INTERVENTION.

United Steelworkers also argues that it should be permitted to intervene pursuant to Rule 24(b). In pertinent part, that rule permits intervention if the movant has "a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B), and whose participation would not "unduly delay or prejudice the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3).

United Steelworkers' request to intervene permissively fails for three reasons. *First*, as discussed above, the union lacks Article III standing to intervene, which precludes permissive intervention.

*Second*, United Steelworkers is wrong (Mot. 23) that its mere "desire to defend the Order" is sufficient to create a claim or defense that permits intervention. That nonsensical reasoning would open the door to intervention in every case where some person or entity wishes to defend, or attack, a challenged government action.

If United Steelworkers instead means to argue that it shares a "claim or defense" with the "main action" because it is defending

Respondents' actions and advancing the same arguments, it fails to explain why the Department of Justice cannot adequately represent that interest.

And to the extent that United Steelworkers means to argue that its purported "injuries" create a "claim or defense," that is not the kind of "claim or defense" that Rule 24(b) contemplates. Rather, "[t]he words 'claim or defense' manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit." *Diamond v. Charles*, 476 U.S. 54, 76 (1986) (O'Connor, J., concurring). United Steelworkers is not a party to any active or impending lawsuit that has any overlapping claim or defense with this action. *See Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1250 (11th Cir. 2002) ("Permissive intervention under Fed. R. Civ. Proc. 24(b) is appropriate where a party's claim or defense *and the main action* have a question of law or fact in common . . . ." (emphasis added)).

*Third*, United Steelworkers states that it plans to "follow the expedited briefing schedule" and will avoid repeating Respondents' arguments. Mot. 23-24. But it is not apparent how United Steelworkers knows what arguments Respondents intend to make, how it knows that

its arguments will not be duplicative, or what its differing arguments will be. The union has not identified a single non-duplicative legal argument that it would advance. And if United Steelworkers does intend to inject entirely new, union-specific issues into this action, those issues will inevitably distract from and delay the existing proceedings while prejudicing Petitioners, who submitted their opening merits brief *before the union even asked to intervene*, even though the union made public statements about this action shortly after it was commenced. *See* Maya Wilkins, *USW President McCall Releases Statement After U.S. Steel Lawsuit*, Chi. Trib. (Jan. 12, 2025), https://bit.ly/4hFk86g.

For all of these reasons, the Court should deny permissive intervention.

## CONCLUSION

The motion to intervene should be denied.

Respectfully submitted.

/s/ David B. Hennes
David B. Hennes
Alexander B. Simkin
Andrew S. Todres
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 596-9000
David.Hennes@ropesgray.com
Alexander.Simkin@ropesgray.com
Andrew.Todres@ropesgray.com

Douglas H. Hallward-Driemeier
Stefan P. Schropp
ROPES & GRAY LLP
2099 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 508-4600
Douglas.Hallward-
Driemeier@ropesgray.com
Stefan.Schropp@ropesgray.com

*Counsel for Petitioners Nippon Steel
North America, Inc. and Nippon
Steel Corporation*

Dated:  February 18, 2025

/s/ Andrew J. Pincus
Andrew J. Pincus
Nicole A. Saharsky
Charles A. Rothfeld
Wajdi C. Mallat
MAYER BROWN LLP
1999 K Street, Northwest
Washington, DC 20006
(202) 263-3000
APincus@mayerbrown.com
NSaharsky@mayerbrown.com
CRothfeld@mayerbrown.com
WMallat@mayerbrown.com

Benjamin D. Bright
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500
BBright@mayerbrown.com

*Counsel for Petitioner United
States Steel Corporation*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,199 words excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirement of Rule 32(a)(6) because it was prepared in a proportionately spaced typeface using Microsoft Word in Century Schoolbook 14-point type for text and footnotes.

/s/ Andrew J. Pincus
Andrew J. Pincus

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2025, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system which will serve all counsel of record.

/s/ Andrew J. Pincus
Andrew J. Pincus